Ben T. **WALKINGSTICK** and Don Davis, Appellants,

v.

The **BOARD OF ADJUSTMENT OF the CITY OF TULSA,** Appellee.

No. 58134.

Supreme Court of Oklahoma.

Sept. 17, 1985.

James R. Gotwals, Tulsa, for appellants.

Prichard, Norman & Wohlgemuth by Charles E. Norman, Tulsa, for appellee Amoco Production Co.

Neal E. McNeill, Jr., City Atty. for City of Tulsa by Alan L. Jackere, Asst. City Atty., Tulsa, for appellee Bd. of Adjustment of City of Tulsa.

HODGES, Justice.

The questions presented on appeal are:

(1) Whether the notice of the hearing to permit the drilling of a test hole and a variance of the enclosure requirements was sufficient to confer jurisdiction on the Board of Adjustment of the City·of Tulsa (appellee or Board); and (2) Whether the Board had authority to grant Amoco Production Company (Amoco) a variance to permit the drilling and operation of a test hole to be used for testing downhole oil and gas exploration tools outside of an enclosed structure on the Amoco Production Company Research Center (Research Center) property under 11 O.S. 1981 § 44–107. Amoco conducts research in connection with its oil and gas exploration business on a 60 acre tract in Tulsa, Oklahoma. Part of the work of the Research Center is to develop and test tools used in the exploration and production of oil and gas. The Tulsa Zoning and Property Restrictions Code (Zoning Code) mandates that all scien-

tific research, testing and development be conducted within enclosed buildings.[1]

Amoco filed an application with the building inspector for a clearance to drill a 3000 foot hole with a conventional drilling rig to test downhole tools. The building inspector orally denied permission to drill. Amoco filed an application with the Board for a variance from the enclosed building requirements which would permit it to drill the test hole out of doors on property located 282.77 feet east of the west line and 416.21 feet north of the south line of the Research Center property. On August 20, 1981, the Board published notice of the public hearing on the application, and mailed written notice to owners of property within 300 feet of the proposed site of the test hole as delineated in the application. At the hearing held on September 3, 1981, neighboring property owners vigorously objected to the requested variance. The Board continued the hearing to allow its members to inspect the site.

At the continued hearing on September 17, Amoco amended its application by proposing the site be moved deeper into its property to a point 493.64 feet east of the west line of the Research Center property and 379.8 feet north of the south line. The Board continued the hearing to October 1, 1981, in order to publish notice for the amended site. However, the Board decided because no owner's property was situated within 300 feet of the amended site, no owners were entitled to notice. It did not mail written notice of the October 1 hearing to any property owner.

At the hearing the Board unanimously granted a variance to permit the drilling of the test hole subject to certain conditions,[2] and granted a variance to the enclosed structure requirement. Ben T. Walkingstick and Don Davis (appellants or landowners), two owners of residential property adjacent to the Research Center, appealed[3] to the District Court for a trial *de novo*. The District Court affirmed the Board's decision to grant the variance. The Court of Appeals affirmed the ruling of the District Court of Tulsa County. This Court has previously granted certiorari to consider: (1) construction of the statutory and zoning ordinance requirement that notice be mailed to all owners of property within a 300 foot radius of the exterior boundary of the subject property, and (2) whether the decision to grant the variance was consistent with previous decisions of this Court.

I

The question to be answered is whether the words "exterior boundary of the subject property," as used in 11 O.S. 1981 § 44–108(A), refer to the entire 60 acre Research Center property or to the actual point on the ground where the test hole would be drilled.

The landowners contend the Board failed to comply with the statutory requirement[4] that written notice be mailed to all owners of property with a 300 foot radius of the exterior boundary of the subject property, and the words subject property refer to the entire contiguous tract of land upon which the proposed test hole would be

---

1. Title 42, Zoning and Property Restrictions, § 1222.3 of the Tulsa Revised Ordinances provides:

   "a. The uses included in Use Unit 22, when located in an IR District shall be conducted within enclosed buildings."

2. The conditions were: (1) the location of the test hole would be as shown on exhibits filed with the Board; (2) the motors on the drilling rig would be equipped with specially designed mufflers commonly referred to as "hospital mufflers;" and (3) no drilling pipe would be pulled or changed between the hours of 9:00 p.m. and 7:00 a.m. during the drilling operation.

3. Appeal to District Court from a decision by a board of adjustment is provided for in 11 O.S. 1981 § 44–110.

4. Title 11 O.S. 1981 § 44–108(A) provides in part:

   "Notice of public hearing before the board of adjustment shall be given by publication in a newspaper of general circulation in the municipality where the property is located and by mailing written notice by the clerk of the board of adjustment to all owners of property within a three hundred (300) foot radius of the *exterior boundary of the subject property*." (Emphasis added).

drilled. The landowners assert that the Board should have mailed written notice to all owners of property within a 300 foot radius of the exterior boundary of the Research Center property. The Board argues that because Amoco's application described only the point [5] where the test hole would be drilled and because no owner's property lies within a 300 foot radius of that point, no owner was entitled to notice.

This is a question of first impression in Oklahoma. The Board cites *Winn v. Nasher*, 360 S.W.2d 909 (Tex.Civ.App.1962) and *Gordon v. City Council of the City of Santa Ana*, 188 Cal.App.2d 680, 10 Cal. Rptr. 776 (1961). *Winn* involved an application to rezone a 93 acre parcel lying within, and carved out of, a much larger tract.[6] Construing a statute requiring that notice of a public meeting be mailed to owners of real property within 200 feet "of the property on which the change in classification is proposed," the *Winn* court held that notice need be mailed only to those owning property within 200 feet of the 93 acre parcel described in the application and not to all owners of property within a 200 foot radius of the entire larger tract.

Similarly, *Gordon* involved an application to rezone a smaller parcel of land carved out of, and contained within, a larger surrounding tract. Construing a city ordinance providing that notice of an application for a variance be given to owners of all lots within 300 feet of the exterior boundary of the property to which the application applied, the *Gordon* court held that the ordinance required notice be given only to those whose property lay within 300 feet of the exterior boundary of the inner parcel, and not to owners of property lying within 300 feet of the entire larger tract.

*Winn* and *Gordon* are distinguishable on their facts from the instant case. In *Winn* and *Gordon* the applications described discrete parcels of land; a clear-cut dividing

line separated and insulated the properties described in the applications from the remainder of the applicants' lands. The facts of the instant case afford no such ready distinction between subject property and non-subject property. Moreover, in *Winn*, the statutory language differs from that in the Oklahoma statute in that there it did not require notice from the "exterior boundary" of the subject property.

Amoco's application describes only a dimensionless point on the ground.[7] An Amoco employee testified that the test hole would measure 24 inches in diameter at the surface. But, the activities of drilling and testing would of necessity be conducted over an area much larger than those few inches of earth. The testimony of Amoco employees indicated the drilling rig itself would cover a considerable area; that a catwalk on which to assemble the string of tools would measure at least 40 feet in length; that a string of tools, when assembled on the catwalk, would measure up to 60 feet in length; and that a reserve pit to hold drilling fluids would have to be large enough to accommodate a 300 barrel steel tank. During actual test, a wire-line logging truck, stationed at distances between 150 feet and 300 feet from the hole, would raise and lower tools in the hole by means of a cable attached to a winch on the truck.

Given these facts, the words "exterior boundary of the subject property" must refer to an area considerably larger than the mere point described in Amoco's application. If a boundary exists dividing the drilling-testing area from the remainder of the Research Center property, it is an amorphous and hazy frontier rather than a clear-cut line. It is obvious from a cursory reading of Section 44–108(A) that an exterior boundary must be established in order for notice to be given to owners within a 300 foot radius therefrom. Therefore, notice is dependent upon the determination of

---

**5.** Amoco's application requests a variance for "A Point in the N ½, SE ¼, NE ¼ of Section 28, T–19–N, R–13–E, Tulsa County, State of Oklahoma, said point being 493.64′ east of the west line of said N ½, SE ¼, NE ¼ and 379.8′ north of the south line of said N ½, SE ¼, NE ¼.

**6.** The entire tract was ¾ths of a mile in length, the opinion does not describe its width.

**7.** *See supra* note 5.

the exterior boundary of the subject property. The 300 foot radius described in Section 44–108(A) should have been measured from the exterior boundary of the Research Center property and notice should have been mailed to all owners of property within that radius.

■ It is a general rule that the requirements of statutes or ordinances with respect to notice of an original hearing upon an application for a variance are mandatory and jurisdictional so that failure to comply with such requirements will ordinarily invalidate the action of a zoning board in granting or denying a variance.[8]

In the instant case, notice is a mandatory and jurisdictional requirement. Title 42 § 1610 of the Zoning Code lists the powers of the Board of Adjustment and states:

"The Board *shall* have the power ... to grant variances ... *in accordance with the* substantive and *procedural standards hereafter set forth.*" (Emphasis added).

It is provided by title 42 § 1630 of the Zoning Code in pertinent part:

"The Board of Adjustment *shall* give notice and conduct a public hearing before ... granting any Variance....

.    .    .    .    .

"b. By mailing written notice to all owners of property within a three hundred (300) foot radius of the exterior boundary of the subject property." (Emphasis added).

This requirement is identical to 11 O.S. 1981 § 44–108(A).

Title 42 § 1670.1 of the Zoning Code states in relevant part:

"The Board *shall* not vary any jurisdictional requirement, such as notice." (Emphasis added).

■ It is well settled in this state that, in statutory construction, the word "shall" connotes a mandatory duty.[9] This Court has recognized that failure to meet statutory requirements concerning notice may deprive a zoning board of jurisdiction and invalidate its decisions. We have held that ordinances were invalid and unenforceable against defendant's property because the city had not complied with the statutory requirement that written notice of a public hearing on any zoning change must be given by mail to all owners of property within a 300 foot radius of the exterior boundary of the subject property.[10]

We conclude that the Board's failure to comply with the statutory notice requirement deprived it of jurisdiction and rendered invalid its decision to grant the variance.

## II

Title 11 O.S. 1981 § 44–107 provides:

"A variance from the terms of the ordinance may be granted, as provided in this article, *only* upon a finding by the board of adjustment that:

1. The application of the ordinance to the particular piece of property would create an unnecessary hardship.

2. Such conditions are peculiar to the particular piece of property involved; and

3. Relief, if granted, would not cause substantial detriment to the public good, or impair the purposes and intent of the ordinance or the comprehensive plan." (Emphasis added).

In addition, section 1670.1 of the Zoning Code provides similar criteria for the granting of a variance.[11] If any single require-

---

**8.** R. Anderson, 3 *American Law of Zoning* 2d § 20.17 (1977); 38 A.L.R.3d 167 § 3 and cases cited therein.

**9.** *McDonald's v. Groves,* 652 P.2d 281, 282 (Okla. 1982); *TIB Corp. v. Edmondson,* 630 P.2d 1296, 1297 (Okla.1981).

**10.** *Morland Development Co. v. City of Tulsa,* 596 P.2d 1255 (Okla.1979) (construing 11 O.S. 1971 § 405).

**11.** "The Board of Adjustment upon application, and after hearing ... may grant such variance from the terms of this Code as will not cause substantial detriment to the public good or impair the spirit, purposes and intent of this Code, or the Comprehensive Plan, where by reason of exceptional narrowness, shallowness, shape, topography, or other extraordinary or exceptional situation, condition, or circumstance peculiar to a particular property, the literal enforcement of

ment is not satisfied the variance should not be granted. The burden of proof rests on the applicant for the zoning variances.[12]

First, the Board contends that literal enforcement would impose an unnecessary hardship because Amoco would be required to construct a building 60 feet high to enclose the hole and mast. The Board's contention is at odds with the evidence and with prior case law.

One of Amoco's chief motives for drilling a test hole at its Research Center is to provide a laboratory in which to test tools under simulated field conditions, including the presence of heat, cold, rain, moisture and dust. The Research Center currently operates four test holes within enclosed buildings. Those holes are of little value, partly because they are too shallow, but primarily because, being indoors, they cannot be used to simulate actual field conditions. For the same reason—inability to simulate field conditions—a hole enclosed within the hypothetical 60 foot building would be of little value to Amoco. It is beyond the range of the credible that Amoco would undertake the construction of a building which would be of little or no value to it. An expense that would never actually be incurred is not an unnecessary hardship.

Were Amoco actually to construct such a building the expense would constitute a self-imposed, rather than an unnecessary, hardship. Literal enforcement of the ordinance in no way interferes with Amoco's right or ability to conduct research and development at the Research Center. Amoco has been conducting such activities there since 1953 and, as Amoco employees testified, it will continue to do so. Should Amoco choose to construct a building in which to conduct additional re-

search, that would be an expense willingly incurred. Generally, a hardship created by the owner of a premises constitutes no valid basis for a variance from a zoning ordinance. To allow a landowner to circumvent the ordinance by creating a self-imposed hardship would emasculate the ordinance as effectively as repeal.[13]

The Board also contends Amoco suffers an unnecessary hardship because it must transport tools to distant field sites for testing, then return the tools to the Research Center for modification before further testing in the field. A Research Center employee testified he now travels to sites as distant as West Virginia and Montana to find holes in which to test tools. A test hole at the Research Center would cut test time to a few hours, and modification of the tools could be made on the spot.

This same employee, however, testified that, if the test hole were not drilled, research and development of tools would still continue at the Research Center; that Amoco would not lose money; and that no employees would lose their jobs.

A test hole at the Research Center would give Amoco an advantage: it would save time. The enclosed building requirement deprives Amoco of that advantage. But, deprivation of an advantage does not constitute an unnecessary hardship. Added advantage alone is insufficient to warrant the granting of a variance.[14]

With regard to the second requirement of the statute, the Board also contends Amoco's need to test tools under simulated field conditions, which cannot be accomplished within an enclosed building, constitutes a peculiar condition that would satisfy section 44–107(2). The need to expose tools to the ravages of the environment may be peculiar to Amoco. But, the lan-

the Code will result in unnecessary hardship.... The Board shall not permit by variance a principal use not otherwise permitted in the applicable district, it being the expressed spirit and intent of this Code that a change of the permitted principal uses shall be made by ordinances amendment of the Zoning Code or Official Zoning Map."

12. *Banks v. City of Bethany,* 541 P.2d 178, 181 (Okla.1975).

13. *Matter of Schrader,* 660 P.2d 135, 138 (Okla. 1983); *Board of Adjustment of Oklahoma City v. Puckett,* 353 P.2d 4, 6 (Okla.1960); *In re Pierce's Appeal,* 347 P.2d 790, 793 (Okla.1959).

14. *Banks, supra* 541 P.2d note 11, at 181.

guage of section 44–107(2) clearly refers to conditions peculiar to the property, not to activities peculiar to the owner of such property.

The third requirement of the statute is that the variance sought must not cause detriment to public good or impair the purposes and intent of the ordinance. Appellants testified the variance may cause depreciation in residential property values to adjacent landowners' property. Appellants offered adverse testimony as to the public safety and aesthetics of the test well. We believe Amoco likewise did not satisfy its burden of proof that the variance will not cause detriment to the public welfare.

Failure to show any one of the requirements is fatal to an applicant's request for a variance. It is our opinion Amoco failed to sustain the burden of proof imposed upon it regarding each of the requirements for obtaining a variance.

### III

We are cognizant of the standards to be followed in reviewing variance cases that a presumption exists as to the correctness of the determination arrived at by the Board and this presumption is given great weight when affirmed by the district court on appeal. *Banks, supra* 541 P.2d at 180. Moreover, the judgment of the district court will not be reversed unless clearly against the weight of the evidence. *Id.*

However, in the instant case, because the Board did not have jurisdiction to consider the matter and Amoco failed to meet the requirements necessary to entitle it to the granting of a variance, we find the District Court's judgment is clearly against the weight of the evidence. Accordingly, the opinion of the Court of Appeals is VACATED in its entirety. The judgment of the trial court is REVERSED with directions to render judgment for appellants.

SIMMS, C.J., DOOLIN, V.C.J., and OPALA, ALMA WILSON, KAUGER and SUMMERS, JJ., concur.

LAVENDER, J., concurs in Part I; dissents to Part II.

HARGRAVE, J., dissents.