**TOXIC WASTE IMPACT GROUP, INC., Appellee,**

v.

**Joan K. LEAVITT, State Commissioner of Health, for the Oklahoma State Department of Health; and Environmental Solutions, Inc., Appellants.**

No. 65334.

Supreme Court of Oklahoma.

March 1, 1988.

As Modified on Denial of Rehearing May 23, 1988.

Jesse L. Sumner, James H. Laughlin, Bartlesville, for appellee.

Robert D. Kellogg, Oklahoma State Dept. of Health, Oklahoma City, for appellant Dept. of Health.

Holliman, Langholz, Runnels & Dorwart, Frederic Dorwart, J. Michael Medina, William Lane Pennington, Dale J. Gilsinger, Tulsa, for appellant Environmental Solutions, Inc.

DOOLIN, Chief Justice.

The questions we address today are: 1) whether the district court made an error of law by including the sub-surface storage area of an industrial waste injection well in computing the outer perimeter of the disposal site, and 2) whether Toxic Waste Impact Group, Inc. [TWIG] had standing to raise the issue of failure of notice and an opportunity to be heard. We answer the first question affirmatively, the second question negatively, and reverse.

### FACTS

Environmental Solutions, Inc. [ESI] leased a forty acre tract of land located within the 16,000 acre Little Ranch in Washington County for fifty years on February 21, 1984. Additionally, ESI leased all sub-surface storage rights in the Arbuckle formation underlying the Little Ranch in a radius of one mile centered at the location of the first industrial waste injection well to be drilled by ESI. To protect the integrity of the Arbuckle formation, the lease provided that the Littles could not drill, nor permit anyone else to drill, any type of well into this sub-surface area.

ESI applied to the Department of Health for a construction permit to drill the industrial waste injection well. As required by statute, 63 O.S.1981 § 1–2006(A)(1) and (B), personal notice was given to all owners of real property located within one mile of the injection well site, in this case the Littles. Public notification was also given by newspaper and radio broadcasts. Several informal public meetings were held prior to the issuance of the construction permit. No public hearings were held because no affected property owners as defined by the Controlled Industrial Waste Management Act requested a public hearing. One qualified public interest group, the League of Women Voters, requested a public hearing, but their request was not timely filed under Department of Health rules. Neither TWIG nor its members requested a public hearing.

The construction permit was issued on September 1, 1985, and on September 12, TWIG filed a "Petition for Review" in the district court, seeking to prevent construction. The trial court granted *ex parte* a temporary stay of the Department of Health's permit, which stay was to remain in force until the court ruled on the prayer for a permanent injunction. On October 15, 1985, the district court found the construction permit to be void *ab initio* because the Department of Health failed to give personal notice to all affected property owners and failed to hold a public hearing at the request of the League of Women Voters; and held therefore, that the Department of Health never acquired jurisdiction to issue the construction permit.

The following diagram illustrates the pertinent details contained in various maps introduced into evidence in the trial court. The diagram is drawn to approximate scale only.

**Legend:**

—·—·— Little Ranch

◔ Well site

———— One-mile radius
from well site

— — — Two-mile radius

✶ ✶ ✶ TWIG owners'
✶ ✶ ✶ property

## I. AFFECTED PROPERTY OWNERS

The Controlled Industrial Waste Management Act[1] [Act] confers responsibility for enforcement of the Act on the Oklahoma State Department of Health[2] [Department of Health] and requires the Department to

---

1. 63 O.S.1981, §§ 1–2001—1–2014.

2. 63 O.S.1981, § 1–2004.

prepare rules, regulations and minimum standards for the disposal of controlled industrial waste,[3] cumulative to the minimum requirements of the Administrative Procedures Act.[4] It is the responsibility of the Department of Health to issue construction permits and operation permits for disposal sites, including injection well sites.[5]

The Act requires the applicant for a construction permit to notify all affected property owners.[6] Affected property owners are defined as all real property owners within one mile of the *outer perimeter of the proposed site.*[7] Here ESI applied for a construction permit for a proposed site consisting of four of the forty acres leased within the 16,000 acre Little Ranch. The only affected property owner within one mile of either the four acre proposed site or the forty acre leased surface area is the owner of the Little Ranch, who was given personal notice as required by the statute. No other property owners were given personal notice.

In an effort to define the outer perimeter of the proposed injection well site as something other than the boundary of the four acres in the construction permit application, TWIG alternatively sought to have the entire 16,000 acre Little Ranch designated as a buffer zone, or to define the one mile radius sub-surface lease as the outer perimeter of the injection well site. Relying on our opinion in *Walkingstick v. Board of Adjustment of the City of Tulsa,* 706 P.2d 899 (Okl.1985), the district court found the one mile radius of the sub-surface boundary lease to be the outer boundary of the injection well site from which the one-mile notification zone should be measured. One member of TWIG owned real property two miles from the injection well but within one

mile of the outer limit of the sub-surface storage area. The court found that failure to give notice to this TWIG member and comply with the requirements of statutory notice deprived the Department of Health of jurisdiction to issue the construction permit and rendered the permit void *ab initio.*

In *Walkingstick,* Amoco proposed to drill a hole to test a new type of drilling equipment on their Research Center property. The statute required that notice be given to all property owners within 300 feet of the proposed site. Amoco wanted to measure the 300 foot notification zone from the test hole, rather than from the boundary of the entire 60 acre Research Center property. The statute in question specified that written notice be given "to all owners of property within a three hundred (300) foot radius of the exterior boundary of the subject property."[8] We found that the 300 foot radius notification zone described in the statute should have been measured from the exterior boundary of the property, not from the test hole. Failure to meet the statutory requirements of notice deprives a zoning board of jurisdiction and invalidates its decision to grant a variance.[9]

■ *Walkingstick* dealt with surface property boundaries, not sub-surface boundaries. In this case, whether the boundary is measured from either the four acre proposed disposal well site or from the perimeter of the entire forty acre surface lease, the only affected property within one mile of the site is the Little Ranch. The Act defines a disposal site as the location where any final disposition of controlled industrial waste occurs and includes, but is not limited to, injection wells and surface disposal sites.[10] Waste disposed by injection well is stored in the sub-surface strata and will eventually percolate to fill the entire formation. Although the legislature

**3.** 63 O.S.1981, § 1–2005.

**4.** 63 O.S.1981, § 1–2005(D). *See-also* 75 O.S. 1981, §§ 301–326.

**5.** 63 O.S.1981, § 1–2004(1).

**6.** 63 O.S.1981, § 1–2006(B).

**7.** 63 O.S.1981, § 1–2006(A)(1).

**8.** 706 P.2d at 903.

**9.** *Id.*

**10.** 63 O.S.1981, § 1–2002(4).

was aware of the characteristics of injection well disposal, nowhere in the Act did the legislature include the sub-surface storage area as part of the boundary of the disposal site. Had the legislature intended to include the sub-surface storage area, they could have done so in clear language. It is the duty of a court to give effect to legislative acts, not to amend, repeal or circumvent them, and a court is not justified in ignoring the plain words of a statute.[11] Neither the Supreme Court nor a district court may expand the plain wording of a statute by construction where the legislature has expressed its intention in the statute as enacted.[12] This Court does not sit as a council of revision, empowered to rewrite legislation in accord with its own conception of prudent public policy.[13]

In furtherance of its mandate under the Act, the Department of Health, in compliance with the Administrative Procedures Act, published Rule 8.7.3, which provides:

> For the purpose of these rules, the area considered to be within one mile of the facility, for determination of affected property owners, shall be determined from the *perimeter of the property of the site or facility as applied for in the construction permit application,* including any buffer zones. (emphasis added).

ESI's application for this construction permit included only the four acre surface site. The Director of the Controlled Industrial Waste Management Division testified in district court that his longstanding interpretation of the Act and of Rule 8.7.3 was the one mile notification zone would be determined by the surface boundary of the

four acre site and no buffer zone is required for an injection well disposal site.

Rules and regulations enacted by administrative agencies pursuant to the powers delegated to them have the force and effect of law [14] and are presumed to be reasonable and valid.[15] The burden of establishing that an administrative rule is not reasonable or valid is on the party complaining of the rule.[16] Great weight is to be accorded the expertise of an administrative agency, and a presumption of validity attaches to the exercise of expertise when the administrative agency is reviewed by a court. A court should not substitute its own judgment for that of an agency, particularly in the area of expertise which the agency supervises.[17] Furthermore, the Department of Health, over a period of eight years and in the issuance of several construction permits, has construed the statute and the rule to include only the surface boundary as the perimeter of the disposal site. Long continued construction of a statute by a department charged with its execution is entitled to great weight and should not be overturned without cogent reasons.[18] The district court failed to consider the Department of Health rules, the Department's expertise, or the Department's longstanding interpretation of the Act in defining the perimeter of the site. We, therefore, find the district court made an error of law by defining the perimeter of an injection well site to include the sub-surface storage area and we reverse. The one mile notification zone should have been measured from the surface boundary of the four acre site in the construction permit application.

**11.** *Allgood v. Allgood,* 626 P.2d 1323, 1327 (Okl. 1981).

**12.** *Sisney v. Smalley,* 690 P.2d 1048, 1051 (Okl. 1984).

**13.** *United States v. Rutherford,* 442 U.S. 544, 555, 99 S.Ct. 2470, 2477, 61 L.Ed.2d 68 (1979).

**14.** *Texas Oklahoma Express v. Sorenson,* 652 P.2d 285, 287 (Okl.1982). *See also Ex Parte Woodruff,* 90 Okl.Cr. 59, 210 P.2d 191, 195 (1949).

**15.** *State v. Parham,* 412 P.2d 142, 152 (Okl. 1966).

**16.** *Id.* at 152 *See also State v. Warren,* 331 P.2d 405, 408 (Okl.1958).

**17.** *Tulsa Area Hospital Council v. Oral Roberts University,* 626 P.2d 316, 320 (Okl.1981).

**18.** *Bell v. Phillips Petroleum Co.,* 641 P.2d 1115, 1121 (Okl.1982). *See also Peterson v. Oklahoma Tax Comm.,* 395 P.2d 388, 391 (Okl.1964); *Atlantic Refining Co. v. Oklahoma Tax Comm.,* 360 P.2d 826, 831 (Okl.1961).

## II. QUALIFIED INTEREST GROUP

The Act required that the Department of Health give notice by publication and radio broadcast to the general public in the locality of the proposed injection well disposal site. Any person residing or doing business in Oklahoma may, within 45 days of the required public notice, request an informal public meeting be held.[19] Here notice was given in compliance with the statute and several informal public meetings were held.

If any affected property owner as defined by the Act or any qualified public interest group requests a public hearing, public hearings must be held before a construction permit may be issued. At such hearing only testimony and evidence concerning the physical and technical suitability of the proposed site may be heard.[20] This section of the Act does not carry a statutory time limit in which to request a public hearing, but by Department rule the request must be made within 45 days after public notice is given. A qualified public interest group is defined as any organization with twenty-five or more members who are legal residents of the State of Oklahoma that expresses an interest in the outcome of the construction permit application.[21] TWIG is such a public interest group, but neither TWIG nor its members requested a public hearing prior to filing the action which is the subject matter of this appeal, despite evidence introduced at the district court that TWIG and its members had actual notice of the construction permit application.

The district court found that the League of Women Voters had requested a public hearing; therefore, a public hearing should have been held. We fail to see how a request for a public hearing by the League of Women Voters confers standing on TWIG to seek redress of an injury to the League. The statute places the burden of requesting a public hearing on the af-fected property owner or on the qualified public interest group.[22] Had the League of Women Voter's request for a public hearing been timely filed under Department rule, and no public hearing held, the League would have sustained an injury in fact and would be the proper party to seek enforcement of the statute. In the alternative, the League would have been the proper party to seek a determination of whether the Department rule requiring requests for public hearings be filed within 45 days after public notice is given deprived them of their due process rights of notice and a hearing.[23] But the League did not bring this action. TWIG brought the action. TWIG never filed a request for a public hearing, nor did TWIG argue or present evidence in the district court about the propriety of the 45 day cutoff rule. The only time the question arose was when the district court raised it *sua sponte* in its order. TWIG cannot rest on its right to request a public hearing and now ride the coattails of the League when the League did not seek adjudication of this issue. We find that TWIG is not the proper party to raise the issue of failure to provide a public hearing when requested by a qualified public interest group.

The decision of the district court is REVERSED. The cause is Remanded to the district court for disposition of unresolved issues, if any, raised by Toxic Waste Impact Group, Inc.'s appeal to that court.

HARGRAVE, V.C.J., and
LAVENDER, SIMMS and OPALA, JJ., concur.

SUMMERS, J., concurs in part; dissents in part.

HODGES and KAUGER, JJ., dissent.

---

**19.** 63 O.S.1981, § 1–2006(C).

**20.** 63 O.S.1981, § 1–2006(D).

**21.** 63 O.S.1981, § 1–2006(A)(2).

**22.** 63 O.S.1981, § 1–2006(D).

**23.** *Independent School District No. 9 v. Glass,* 639 P.2d 1233, 1237 (Okl.1982).