**TOXIC WASTE IMPACT GROUP, INC.,**
**a non-profit corporation, Appellee,**

v.

**Joan K. LEAVITT, State Commissioner of Health, for the Oklahoma State Department of Health;  and Environmental Solutions, Inc., Appellants.**

No. 72235.

Supreme Court of Oklahoma.

Dec. 20, 1994.

---

Jesse L. Sumner, Laughlin, Sumner & Associates, Bartlesville, for appellee.

Robert D. Kellogg, Oklahoma City, for appellant State Com'r of Health and Dept. of Environmental Quality–Successor to the State Health Dept.

Carl Hughes, Oklahoma City, and James L. Kee, Duncan, for appellant Environmental Solutions, Inc.

LAVENDER, Vice Chief Justice:

We reverse the trial court decision in this matter and remand to that court to determine a preeminent issue, whether appellee, Toxic Waste Impact Group, Inc. (TWIG) has standing to challenge a certain permit granted to appellant, Environmental Solutions, Inc. (ESI) by appellant, Oklahoma State Department of Health (OSDH) in a judicial review proceeding under 75 O.S.1981, § 318 of the Oklahoma Administrative Procedures Act, 75 O.S.1981, § 301 et seq., as amended [now 75 O.S.1991, § 250 et seq., as amended].[1]

ESI was granted a five (5) year permit in 1985 by OSDH to construct a waste injection

---

1. The OAPA, including § 318, was amended by the Forty–Third Legislature. 1992 Okla.Sess. Law Serv. (West), Ch. 310, §§ 1–18. The amendments are not before us. In addition to the standing issue, currently before us are two motions for summary disposition filed by ESI and two motions to dismiss filed by TWIG. In light of our ruling on the standing issue we deny these motions. ESI also requests sanctions against TWIG for filing the first motion to dismiss and in regard to a response filed by TWIG to ESI's second motion for summary disposition. The requests for sanctions are not contained in separate motions, but are contained in ESI's October 1, 1990 response to the motion to dismiss as proposition three and as proposition four to its October 1, 1990 reply regarding its second motion for summary disposition. We do not find the initial motion to dismiss or TWIG's response to the second motion for summary disposition wholly frivolous and we summarily deny the requests for sanctions for this reason.

well under the Oklahoma Controlled Industrial Waste Disposal Act (OCIWDA), 63 O.S. 1981, § 1–2001 et seq., as amended.[2] TWIG, a group of citizens, sought to block construction by voiding the permit. Although taking part in public **meetings** before OSDH on the matter, TWIG did not request a public **hearing,** as it would have been allowed to do as a qualified interest group pursuant to 63 O.S. 1981, § 1–2006(D). The OCIWDA allowed the opportunity for both public hearings and meetings. § 1–2006(C) and (D). A hearing could be requested by statutorily defined affected property owners (within one mile of the well site) and qualified interest groups (organizations with 25 or more legal residents of Oklahoma) and meetings could be requested by any person residing or doing business in Oklahoma. § 1–2006(A)–(D).

This case has been here previously. In *Toxic Waste Impact Group, Inc. v. Leavitt,* 755 P.2d 626 (Okla.1988) (*TWIG I*), we reversed a trial court order which voided the permit purportedly because no actual notice was given to property owners within one mile of the site and because no public hearing was held. We ruled OSDH's interpretation of a statutory notice requirement, as applying to property owners within one mile of the site meant one mile from the **surface** site, was proper, rather than one mile from the **subsurface** storage area. *Id.* at 629–630. We also held in that TWIG had **not** requested a public hearing it had no standing to raise the question of the propriety of the fact no hearing was held on a request by another entity who, although requesting a public hearing,

did so after a forty-five (45) day time limit set by OSDH rules. *Id.* at 631. Initially, we reversed the trial court. 59 O.B.J. 599, 602 (Okla.S.Ct. March 1, 1988). However, on rehearing by TWIG we reversed **and** remanded for disposition of unresolved issues, if any. 755 P.2d at 631.

One issue open for litigation and determination upon our remand was whether TWIG **had standing** to appeal the granting of the construction permit under § 318 of the OAPA as a **person** adversely affected or aggrieved by the granting of the permit, even though it had foregone the opportunity to request a public hearing.[3] Section 318 allowed appeals by both **parties and persons** aggrieved or adversely affected.[4]

On remand the trial court appeared to assume we decided the standing issue in TWIG's favor by virtue of our modification of our opinion in *TWIG I* on rehearing, even though we did not indicate such when we changed the opinion to remand the case to the trial court for determination of unresolved issues. The trial court also determined TWIG had **party** status at the administrative level under the OAPA in that it had taken part in public **meetings,** held after the time for requesting a public hearing had lapsed. The trial court further found TWIG was aggrieved on the basis the procedures of the OAPA in regard to individual proceedings were not followed, e.g. written order with findings of fact/conclusions of law, including a written finding the proposed site and facility were physically and technically

---

**2.** The OCIWDA is now known as the Oklahoma Hazardous Waste Management Act. 27A Supp. 1993, § 2–7–101. We also note that in 1992 the Oklahoma Legislature promulgated a comprehensive set of statutory enactments concerning the environment. *See e.g.* 27A Supp.1993, § 1–1–102 et seq., the Oklahoma Environmental Quality Act. A new State agency was created, the State Department of Environmental Quality, which succeeded to the jurisdiction of the State Department of Health over hazardous waste. 27A Supp.1993, § 2–7–101 et seq., as amended; 1994 Okla.Sess.Law Serv. (West), Ch. 140, § 24, to be codified at 27A Supp.1994, § 1–3–101(B)(8). Unless otherwise indicated, our decision in this matter is based on the statutes in effect during the time the involved permit was granted.

**3.** OSDH adequately raised the standing issue in the trial court in its October 27, 1988 Brief of [OSDH] Concerning Issue of Administrative Procedures Act in Proposition IV of said brief. Therein OSDH argued even if the permitting process was governed by the individual proceeding provisions of the OAPA TWIG had no standing to obtain judicial review of the granting of the permit because TWIG was neither aggrieved or adversely affected within the meaning of § 318 of the OAPA by the granting of the permit.

**4.** The separate reference to person as one who may appeal under § 318 was deleted by recent legislative amendments. 1992 Okla.Sess.Law Serv. (West), Ch. 310, § 14; 75 O.S.Supp.1993, § 318. We express no view on the effect of this deletion.

suitable for the well.[5] The trial court also determined because the OCIWDA provided for notice and opportunity for a public hearing by statute [63 O.S.1981, § 1–2006(B)–(D) ], it did not matter no one timely requested a public hearing; the matter still had to conform to the individual proceeding provisions of the OAPA and granting of the permit was subject to review under the OAPA. In that the trial court found OSDH did not follow the proper procedures under the OAPA she again set aside the permit.

Both OSDH and ESI appealed. The main arguments are TWIG has no standing to obtain judicial review of the granting of the permit under the OAPA and because no timely request for a public hearing was made and one was not held, the permitting process was not even subject to the OAPA, including the individual proceeding provisions thereof and the provision allowing for judicial review.

In that we did not determine the standing issue in TWIG's favor in *TWIG I*, but that issue was one remaining for trial court determination in the first instance on remand, we must again remand this case to the trial court for resolution of that preeminent issue. In view of our ruling on the standing issue we do not reach the other issues raised in this appeal.[6] We provide guidance to the trial court to make the initial standing determination on remand.

We first note that the party invoking a court's jurisdiction has the burden of establishing his or her standing (when contested) to pursue the action in court. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, ——, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351, 364 (1992).[7] At a minimum standing contains three elements. In *Lujan*, the United States Supreme Court explained these three essential elements of standing as follows:

> Over the years, our cases have established that the irreducible constitutional minimum of standing contains three elements: First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally-protected interest which is (a) concrete and particularized, ... and (b) "actual or imminent, not 'conjectural' or 'hypothetical,' " .... Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be "fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court." Third, it must be "likely," as opposed to merely "speculative," that the injury will be "re-

---

5. Section 1–2006(B) of the OCIWDA required such a finding before a permit be granted, although the section does not specify a written finding be made when no one requests a public hearing. The record is fairly clear that although a **written** finding of physical and technical suitability was not made, OSDH did make such a determination. An OSDH employee with responsibility under the OCIWDA testified in a hearing held prior to the first appeal in *TWIG I* the determination **was** made prior to the granting of the permit.

6. One such issue, raised by ESI in its second motion for summary disposition, is whether our decision in *Stewart v. Rood*, 796 P.2d 321 (Okla. 1990), *overruled in part, DuLaney v. Oklahoma Department of Health*, 868 P.2d 676 (Okla.1993), controls disposition of the individual proceeding aspects of this case raised by the parties and whether the permit was even subject to judicial review under the OAPA. We do not decide these issues because the standing issue **must be** determined first. In that no definitive determination has ever been made on this issue no other issue may be decided because standing is a threshold question. *See Matter of Estate of Doan*, 727 P.2d 574, 576 (Okla.1986) (standing determines whether the person is the proper party to request adjudication of a certain issue and does not decide the issue itself).

7. Federal court jurisprudence articulating standards for standing pursuant to Art. III of the United States Constitution do not necessarily define standing pursuant to Art. VII of the Oklahoma Constitution. However, in that our standing standards are analogous to those pronounced by the United States Supreme Court its jurisprudence on the subject is instructive. *Hendrick v. Walters*, 865 P.2d 1232, 1236 f.n. 14 (Okla.1993). Since standing to pursue an action in court is an indispensable part of a plaintiff's case, standing must be supported in the same way as any other matter upon which the plaintiff bears the burden of proof. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, ——, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351, 364. This means that a plaintiff must initially allege, and later, if necessary, present evidence at trial on those facts showing injury to the plaintiff from the conduct of the defendant. *Id.* at —— ——, 112 S.Ct. at 2136–37, 119 L.Ed.2d at 364–365.

dressed by a favorable decision." (citations and footnote omitted)

*Id.* at ——, 112 S.Ct. at 2136, 119 L.Ed.2d at 364.

■ Our own jurisprudence is similar and has held that, normally, aggrieved status is limited to those persons whose pecuniary interest in the subject matter is directly and injuriously affected or one whose rights in property is either established or divested by the decision appealed. *Missouri–Kansas–Texas R. Co. v. State,* 712 P.2d 40, 42 (Okla. 1985). The adverse affect must be direct, substantial and immediate, rather than contingent on some possible remote consequence or possibility of some unknown future eventuality. *Id.* at 42–43. The appropriate inquiry on a standing question is whether the plaintiff has in fact suffered injury to a legally protected interest as contemplated by statutory or constitutional provisions. *Independent School District No. 9 v. Glass,* 639 P.2d 1233, 1237 (Okla.1982). Only if standing exists must the case proceed to the merits [*Id.* ] for the reason only one whose substantial rights are injuriously affected may appeal from a decision, however erroneous. *See National Motor Club of Oklahoma v. State Insurance Board,* 393 P.2d 511, 513 (Okla. 1964). Finally, standing only determines whether the person is the proper party to seek adjudication of a certain issue; it does not decide the issue itself. *Matter of Estate of Doan,* 727 P.2d 574, 576 (Okla.1986).

■ TWIG, by virtue of failing to request a public hearing and by force of our decision in *TWIG I,* cannot be said to have **statutory** standing as a qualified interest group. Only if it (or more ·probably one or more of its members) was in fact aggrieved or adversely affected, as those terms are used in § 318, can it now claim standing to contest the issuance of the permit.

As a qualified interest group entities such as TWIG have been granted **statutory** standing to contest the granting of a construction permit for a hazardous waste site. The Leg-

islature clearly has the authority to grant standing to someone by statute and has done so in other contexts. *See e.g. Northwest Datsun v. Oklahoma Motor Vehicle Commission,* 736 P.2d 516 (Okla.1987) (automobile dealers within ten miles of the establishment of new dealer franchise given standing to protest licensing of new dealer). Such standing is not **necessarily** based on any injury to a property right, constitutional right or other legally recognized right, which may be done to the qualified interest group. Merely, it is a legislative policy decision in the context of the OCIWDA qualified interest groups, **that request a public hearing,** are granted standing to participate in the permitting process.

■ Even if one assumes the statutory grant to participate in the permitting process before the administrative agency also affords a basis to claim aggrieved status sufficient to seek judicial review under § 318 of the OAPA, in that TWIG **failed to request a hearing** it can no longer claim it has standing through this statutory avenue. In essence, its status as a qualified interest group is now irrelevant to the standing inquiry and TWIG is in no better position than anyone else who might have sought judicial review under § 318. For us to now rule TWIG has statutory standing to seek judicial review merely because it **might have** had such standing as a qualified interest group **had it timely requested a public hearing** would be antithetical to our ruling in the first appeal. To rule otherwise would mean when a person or entity is granted statutory standing to participate in a permitting process they can wait until the time for requesting a hearing has lapsed and only then go into court after the permit is granted and claim error the OAPA was not followed in all its particulars, **even though it made no such claims before the administrative agency.** Such is not and cannot be the law. Accordingly, although TWIG is an organization that **might have** claimed statutory standing, it gave up such claim by its failure to timely request a hearing before the administrative agency.[8]

---

8. TWIG claims in its response merit brief in this appeal some form of res judicata (really law of the case doctrine) should be applied on the standing issue in its favor. Such argument is

unavailing. We did not rule in *TWIG I* that TWIG had standing to obtain judicial review of the permit under § 318 of the OAPA either as a statutory qualified interest group or as a party to

■ Neither can TWIG's standing be based simply on its participation in the public **meetings.** Even if one assumes the trial court is correct TWIG by virtue of such participation was a party to an individual proceeding under the OAPA this fact alone **does not** answer the standing inquiry. In *National Motor Club of Oklahoma, supra,* 393 P.2d at 515, we held the right to protest and submit evidence before an agency does not *ipso facto* grant the protesting party the right to maintain an appeal from the agency decision. The protesting party must still show it is somehow aggrieved or adversely affected by the administrative order. *Id.* The determinative question, whether it be a party or person seeking judicial review of an administrative decision under § 318, is 'whether aggrieved or adversely affected status can be shown. *See Roussel v. State ex rel. Grimes,* 614 P.2d 53, 56–57 (Okla.1980) (determinative question as to standing issue under § 318 is whether the person or party is aggrieved or adversely affected by the agency decision).[9]

■ This does not mean, however, TWIG, as an entity or, more probably, on behalf of one or more of its members, would be precluded from attempting to show it somehow has standing **in fact** as a person aggrieved or adversely affected by the grant of the permit. However, for one to be aggrieved or adversely affected by the decision of an administrative agency under § 318 of the OAPA it must be shown the agency decision injuriously affects the **substantial** rights of the person. *National Motor Club of Oklahoma, supra,* 393 P.2d at 513–515. It is also well to remember that making a case such as TWIG's is not an easy one, and that when a plaintiff is challenging government regulation of an applicant such as ESI facts necessary for non-statutory standing are difficult to show. *Lujan* put it this way:

When the suit is one challenging the legality of government action or inaction, the nature and extent of facts that must be averred (at the summary judgment stage) or proved (at the trial stage) in order to establish standing depends considerably upon whether the plaintiff is himself an object of the action (or foregone action) at issue. If he is, there is ordinarily little question that the action or inaction has caused him injury, and that a judgment preventing or requiring the action will redress it. When, however, as in this case, a plaintiff's asserted injury arises from the government's alleged unlawful regulation (or lack of regulation) of *someone else,* much more is needed. In that circumstance, causation and redressability ordinarily hinge on the response of the regulated (or regulable) third party to the government action or inaction—and perhaps on the response of others as well. The existence of one or more of the essential

---

the administrative process leading up to the grant of the permit. Thus, the law of the case doctrine does not apply to favor TWIG on the standing issue for the reason that doctrine operates to bar relitigation of only those issues actually settled by an appellate opinion. *Willis v. Nowata Land and Cattle Co., Inc.,* 789 P.2d 1282, 1285, f.n. 10 (Okla.1989). As to the standing issue, however, what *TWIG I* did determine was that TWIG did not request a public hearing prior to filing the proceeding in the district court seeking judicial review of the granting of the permit and it had no standing to contest the forty-five (45) day time limit for requesting a public hearing in conformity with the rules of OSDH. *Toxic Waste Impact Group v. Leavitt,* 755 P.2d at 631. These issues were unequivocally fully and fairly litigated against TWIG in *TWIG I.* Likewise, our decision in *TWIG I* conclusively determined there was only one affected property owner entitled to statutory personal notice as an affected property owner and, thus, entitled by the OCIWDA to request a public hearing. *Id.* at 627–630.

This property owner was ESI's lessor and all appear to agree, said lessor(s) did not request a public hearing or contest the permit granted to ESI. Therefore, no individual member of TWIG can now claim any statutorily granted standing under the OCIWDA to contest the granting of the permit. This does not, however, preclude TWIG, on behalf of one or more of its members, from attempting to show that said member(s) have standing by virtue of some constitutional right to notice and opportunity to a hearing independent of the OCIWDA. *See DuLaney v. Oklahoma Department of Health,* 868 P.2d 676 (Okla.1993).

9. It should be remembered the OCIWDA allows for the requesting of a public **meeting** by **any** person residing or doing business in Oklahoma. § 1–2006(C). As noted in the text, even if it is assumed all persons who participate in the meetings are parties to an individual proceeding, to obtain judicial review under § 318 of the OAPA aggrieved or adversely affected status **must** be, shown.

elements of standing "depends on the unfettered choices made by independent actors not before the courts and whose exercise of broad and legitimate discretion the courts cannot presume either to control or to predict," . . .; and it becomes the burden of the plaintiff to adduce facts showing that those choices have been or will be made in such manner as to produce causation and permit redressability of injury. Thus, when the plaintiff is not himself the object of the government action or inaction he challenges, standing is not precluded, but it is ordinarily "substantially more difficult" to establish. (emphasis in original; citations omitted)

*Lujan, supra,* —— U.S. at ——, 112 S.Ct. at 2137, 119 L.Ed.2d at 365.

In that TWIG cannot now claim statutory standing as a qualified interest group, it has **not yet shown** it or any of its members has been or will be adversely affected in any direct, substantial and immediate way by the granting of the instant permit. Until it does so no other issue in this case can be decided.[10] Accordingly, the decision of the trial court is **REVERSED** and **REMANDED WITH DIRECTIONS** to determine the standing issue.

HODGES, C.J., and SIMMS, HARGRAVE, OPALA and SUMMERS, JJ., concur.

ALMA WILSON, KAUGER and WATT, JJ., concur in part; dissent in part.

OPALA, Justice, concurring.

The court holds today that Toxic Waste Impact Group, Inc.'s [TWIG] claim must be remanded for nisi prius determination of whether TWIG has standing as a Hohfeldian plaintiff[1]—*i.e.,* whether it has a legally-pro-

---

**10.** In September 1990 TWIG moved to dismiss this appeal on the basis ESI's permit expired by its own terms on September 1, 1990. Mootness is claimed on the basis ESI is now required to make a new application for a construction permit. In response OSDH and ESI in part rely on a new statute [63 O.S.1991, § 1–2012.4, renumbered in 1993 as 27A Supp.1993, § 2–7–132 and amended in 1994. *See* 1994 Okla.Sess.Law Serv. (West), Ch. 373, § 25] they claim has the effect of extending the time limit contained in the permit. ESI also argues the five (5) year time limit of the permit was stayed on motion of TWIG itself in the trial court prior to the initial appeal and again on remand. TWIG filed a second motion *to dismiss in July 1991 also based on mootness.* In essence, it argues another new statute [63 O.S.1991, § 1–2014.3, renumbered in 1993 as 27A Supp.1993, § 2–7–114 and amended in 1994. *See* 1994 Okla.Sess.Law Serv. (West) Ch. 373, § 20] prohibits a new facility from being located within eight (8) miles of any incorporated city or town and that the proposed well is within this distance from five (5) Oklahoma cities or towns.

In *American Ins. Ass'n v. Industrial Com'n,* 745 P.2d 737 (Okla.1987), we held unless on review there is some liberty or property interest which requires us to apply to the accrued or vested rights in controversy the law in force at a fixed point in time prior to its most recent change, an amendment of controlling statutory law between the trial court and appellate decisions should be applied. *Id.* at 740. We also recognized, however, an appellate court cannot exercise first-instance jurisdiction by making initial decisions on facts or law and when necessary findings are absent, the case must be remanded with di-

rections they be made by the trial court. *Id.* at 740, f.n. 15.

As stated in note 1, *supra,* in light of our decision on the standing issue which necessitates our reversal of the trial court's decision we deny TWIG's motions to dismiss based on mootness. However, should the trial court determine TWIG has standing to obtain judicial review of the granting of the permit, the mootness issues raised by TWIG would be a proper subject of inquiry by the trial court and the parties at that time could present their arguments in support of or in opposition to application of either of the new statutes set forth above.

**1.** A Hohfeldian plaintiff is a legal entity that seeks a judicial determination that *it* has "a right, a privilege, an immunity or a power" vis-a-vis the opposite party in litigation. Jaffe, The Citizen As Litigant In Public Actions: The non-Hohfeldian or Ideological Plaintiff, 116 U.Pa.L.Rev. 1033 (1968). A non-Hohfeldian plaintiff, on the other hand, sues to secure judicial relief that would benefit other persons or the community as a whole. *Id.* The *qui tam* plaintiff of the common law, who sues primarily to benefit a public entity, is typically non-Hohfeldian. *Oklahoma City News Broadcasters Ass'n v. Nigh, Okl.,* 683 P.2d 72, 78 n. 2 (1984) (Opala, J., concurring in result); *State ex rel. Trimble v. City of Moore, Okl.,* 818 P.2d 889, 894 (1991); *see Flast v. Cohen,* 392 U.S. 83, 120, 88 S.Ct. 1942, 1963, 20 L.Ed.2d 947 (1968) (Harlan, J., dissenting); Scott, Standing in the Supreme Court—A Functional Analysis, 86 Har.L.Rev. 645, 660–662 n. 1 (1973); Davis, Standing: Taxpayers and Others, 35 U.Chi.L.Rev. 601, 604–607 (1968); *see also Sierra Club v. Morton,* 405 U.S. 727, 732 n. 3, 92

tected and tangible interest in the litigation before the trial court.[2] To proceed with its claim TWIG must demonstrate that there is a logical nexus between the status it asserts and the claim it seeks to have adjudicated. Its standing must be predicated on an injury to an interest which is "direct, immediate and substantial."[3] Although I concur in the court's remand of the cause for determination of standing, I write separately (a) to reemphasize the *distinctions between federal and state standing concepts*[4] and (b) to call attention of the Bench and the Bar to our extant jurisprudence[5] which, through an inadvertent reference to federal law, created the misimpression that in the state legal system standing has a *"jurisdictional"* dimension.

S.Ct. 1361, 1364–1365, 31 L.Ed.2d 636 (1972); *Clark v. Valeo*, 559 F.2d 642, 675 (D.C.1977). In a stockholder's derivative suit the plaintiff is in the very same category as a *qui tam* plaintiff. *Warren v. Century Bankcorporation, Inc., Okl.*, 741 P.2d 846, 847, 853 (1987).

**2.** An earlier opinion in this case, *Toxic Waste Impact Group, Inc. v. Leavitt, Okl.*, 755 P.2d 626 (1988) [*TWIG I*], held that TWIG did not meet the criteria for the *statutory* conferral of standing under the Oklahoma Hazardous Waste Management Act [OHWMA], 27A O.S.Supp.1993 § 2–7–101 [previously known as the Oklahoma Controlled Industrial Waste Disposal Act (OCIWDA), 63 O.S.1991 §§ 1–2001 *et seq.*].

**3.** *Democratic Party of Oklahoma v. Estep, Okl.*, 652 P.2d 271, 274 (1982); *Application of State ex rel. Dept. of Transp., Okl.*, 646 P.2d 605, 609 (1982); *Underside v. Lathrop, Okl.*, 645 P.2d 514, 517 (1982); *Cleary Petroleum Corp. v. Harrison, Okl.*, 621 P.2d 528, 530 (1980).

**4.** The three requisite elements for the judicial power's exercise are: (a) jurisdiction over the parties, (b) jurisdiction over the subject matter and (c) power to render a particular judgment. *Carlile Trust v. Cotton Petroleum Corp., Okl.*, 732 P.2d 438, 441 (1987); *Chamberlin v. Chamberlin, Okl.*, 720 P.2d 721, 725 (1986); *Mayhue v. Mayhue, Okl.*, 706 P.2d 890, 893 n. 8 (1985). *See also* C.A. WRIGHT, LAW OF FEDERAL COURTS § 7, at 26 (4th ed. 1983). In federal court a litigant must overcome two threshold hurdles: "*constitutional limitations* of federal courts' jurisdiction and *prudential limitations* on its exercise." *Warth v. Seldin*, 422 U.S. 490, 498, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975). [Emphasis supplied.] The *constitutional* aspect of federal standing is tied to "whether the plaintiff has made out a 'case or controversy' between himself and the defendant within the meaning of Art. III."

# I

## *FEDERAL* VERSUS *STATE* STANDING

Standing[6] in the federal legal system is imbued with a constitutional/jurisdictional dimension, while in the body of state law it fits under the rubric of ordinary procedure. The U.S. Constitution, Article III, has long been held to require that a "case" or "controversy" is essential to invoke *federal judicial jurisdiction* and that a person's competence to bring an action is a core component of standing in a case-or-controversy inquiry.[7] It is for this reason that standing is an integral part of the mechanism for invoking the federal judiciary's power.[8]

Oklahoma's fundamental law places *no* restraint on the judiciary's power analogous to the federal case-or-controversy requirement.

*Warth, supra*, 422 U.S. at 498, 95 S.Ct. at 2205. Because of the Art. III "case or controversy" requirement, *standing in federal court is a component of its subject matter jurisdiction.* In contrast, in the Oklahoma legal system standing is not a component of *any* of the three indispensable jurisdictional elements. *See* subpart I, *infra*.

**5.** *See Matter of the Estate of Doan, Okl.*, 727 P.2d 574, 576 (1986).

**6.** Standing in the federal system owes its origin to a historic practice by the English parliament of "allowing only those opponents of legislative proposals ... or interests [who] were directly and specially affected to be heard." Benck, *Standing for State and Federal Legislators*, 23 SANT.CLARA L.REV. 811, 813 (1983), citing J. Vining, Legal Identity 55, 55–56 (1978). Under this legislative procedure an opponent affected by the proposed legislation was said to have *locus standi* ["A right of appearance ... on a given question." BLACK'S LAW DICTIONARY at 848 (5th Ed.1979)]. The English *judiciary* adopted these interest-in-legislation criteria and required that the parties have an *interest in the litigation. Id.* at 813 n. 17.

**7.** When the claimant is without standing, there is simply no "case" or "controversy". *See* C.A. WRIGHT, LAW OF FEDERAL COURTS § 13, at 59–74 (1983). *See also* Part I of *Lujan v. Defenders of Wildlife*, —— U.S. ——, ——, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1994) [Part I, unlike Part III–B, represents the opinion of a majority of the Court's members]; *Flast, supra* note 1 at 392 U.S. at 93–94, 88 S.Ct. at 1949.

**8.** *See Flast, supra* note 1 392 U.S. at 112–13, 88 S.Ct. at 1959.

Under the earlier Code of Civil Procedure [9] the suit had to be brought by the *real party in interest.*[10] That requirement has *always* been non-jurisdictional.[11] If a state court proceeded to adjudicate a claim pressed by one *not in that status,* its decision was not fraught with *jurisdictional infirmity* but rather regarded as *erroneous for want of proof* to establish an important element of the claim.[12] An error in this category is *waivable* at the option of the defendant; and, if not asserted on appeal, the reviewing court *may* reach the merits of the case despite a plaintiff's apparent lack of standing at nisi prius.

earlier procedural terms of art—real party in interest, one with appealable interest, one occupying the aggrieved-party or pecuniary-interest status.[17] It was during this transition that one of our opinions [18] inadvertently referred to "standing" in terms of a *jurisdictional* requirement, thus creating the misimpression that the term has a jurisdictional dimension. Oklahoma's constitution has no case-or-controversy clause. Standing is hence to be viewed as an adjective-law concept. The inadvertent reference to the contrary should be treated as ineffective to alter standing's true character in the body of our procedural law.

## II

### INSOFAR AS *DOAN*[13] MAY INFER THAT "STANDING" HAS A JURISDICTIONAL DIMENSION, IT IS TO BE VIEWED AS WITHDRAWN

Ever since the Code of Civil Procedure [14] was replaced in 1984 by the Pleading Code,[15] our nomenclature for identifying the party entitled to sue, which began to follow that of federal jurisprudence,[16] has used "standing" as if it were a functional equivalent of the

## III

### REMAND TO DETERMINE TWIG'S POST–PROTEST STATUS AND ITS NEXUS TO THE ASSERTED CLAIM IS PROPER

Today's remand to determine TWIG's standing as a Hohfeldian plaintiff—*i.e.,* a person with a personal or proprietary interest at stake [19]—is necessary. Absent a contrary *statutory* definition, standing is tied to

9. OKLA.STAT. 1908 §§ 3529 *et seq.*

10. K.C. DAVIS, ADMINISTRATIVE LAW TREATISE § 22.01, at 210 (1958), in discussing the distinction between state and federal standing notes:

> "Speaking very broadly, the state courts that have constructed their own doctrine [of standing] independently of the federal doctrine have usually tended toward the simpler, less artificial, and more satisfactory idea that anyone who is in fact substantially injured by administrative action has standing to challenge it."

11. *Baugh v. Little,* 140 Okl. 206, 282 P. 459, 462 (1929). *See also Hawkeye Bankcorporation v. Iowa College Aid Commission,* 360 N.W.2d 798, 802 (Iowa 1985); *Life of the Land v. Land Use Com'n, etc.,* 63 Haw. 166, 623 P.2d 431, 438 (1981); *Knierim v. Leatherwood,* 542 S.W.2d 806, 808 (Tenn.1976).

12. The power of a court to decide *includes* the power to *decide wrongly.* An erroneous decision is as binding as one that is correct until it is set aside or corrected in a manner provided by law. *Bill Hodges Truck Co. v. Gillum, Okl.,* 774 P.2d 1063, 1067 (1989); *Ferguson v. Ferguson Motor Co., Okl.,* 766 P.2d 335, 338 (1988); *Citizens State Bank of Hugo v. Hall, Okl.,* 413 P.2d 513,

516 (1966); *Woodrow v. Ewing,* 263 P.2d 167, 171 (1953).

13. *See Doan, supra* note 5.

14. *See supra* note 8 for the Code of Civil Procedure's citation.

15. 12 O.S.Supp.1984 §§ 2001 et seq.

16. *See* the standing test adopted in today's opinion, which parallels the terminology of *Lujan, supra* note 7 at —— U.S. at ——, 112 S.Ct. at 2134. Since our standing standards are *analogous* though not *identical* to those pronounced by the United States Supreme Court, the latter's jurisprudence is *always instructive. Hendrick v. Walters, Okl.,* 865 P.2d 1232, 1236 n. 14 (1993); *Campbell v. White, Okl.,* 856 P.2d 255, 266 (1993).

17. *See, e.g., Underside v. Lathrop, Okl.,* 645 P.2d 514, 515, 517 (1982); *Cleary Petroleum Corp. v. Harrison, Okl.,* 621 P.2d 528, 530–31 (1980).

18. *See Doan, supra* note 5 at 576.

19. *See Fowler v. Bailey, Okl.,* 844 P.2d 141, 150 (1992) [Opala, J., concurring].

the concept of a Hohfeldian plaintiff.[20] Neither OCIWDA [21] nor OHWMA [22] discloses a legislative intent to extend beyond the protest period the *non-Hohfeldian* status authorized for the earlier stage of proceedings. *TWIG I* [23] *answered in the negative the single question of whether TWIG had statutory standing.* It did not address TWIG's standing as a Hohfeldian or common-law plaintiff in the post-protest permit-issuing process.

## IV

### SUMMARY

I concur in today's opinion and in the disposition of this cause. If I were writing for the court, I would *additionally* declare that *Doan's* inadvertent reference to federal law is to be viewed as withdrawn. *Lujan's* tripartite standing test, which we adopt today, must be treated as having been received *sans* its federal jurisdictional baggage.

---

**20.** *See supra* note 1 for the identification of a Hohfeldian plaintiff. For a general discussion of the distinctions between statutory and common-law [Hohfeldian] standing, see 3 K.C. Davis, Administrative Law Treatise § 16.7, at 47–49 (3d ed. 1994).

**21.** *See supra* note 2 for the OCIWDA citation.

**22.** *See supra* note 2 for the OHWMA citation.

**23.** *See supra* note 2 for this case's citation.