2000 OK CIV APP 24

John RYALS, Plaintiff/Appellant,

v.

Frank KEATING, The Governor of the State of Oklahoma, Defendant, and The Oklahoma Tax Commission; Robert Anderson, Chairman; Jerry Johnson, Vice–Chairman; and Don Kilpatrick, Secretary Member, Defendants/Appellees.

No. 92,775.

Court of Civil Appeals of Oklahoma, Division No. 1.

Nov. 15, 1999.

Certiorari Denied Feb. 16, 2000.

Michael Minnis, David McCullough, Michael McMahan, Oklahoma City, Oklahoma, For Plaintiff/Appellant.

Thomas E. Kemp, David L. Kinney, Sean R. McFarland, Oklahoma City, Oklahoma, For Defendants/Appellees.

## OPINION

Opinion by CAROL M. HANSEN, Presiding Judge:

¶ 1 Plaintiff/Appellant, John Ryals, sued the Governor, the Oklahoma Tax Commis-

sion; and its members seeking a judgment declaring HB 2208, Okla. Sess. Laws 1996, c. 345, null and void and enjoining its enforcement. The trial court granted the Governors motion to dismiss him as a party. Ryals then moved for summary judgment. The remaining defendants (collectively OTC) objected to Ryals motion and moved for summary judgment against him. The parties submitted a joint statement of material facts. The trial court granted summary judgment in favor of OTC and against Ryals. Ryals appeals without appellate briefs in conformance with the procedures for the appellate accelerated docket, Okla. Sup.Ct. R. 1.36, 12 O.S.Supp.1996, Ch. 15, App. 1.

¶ 2 The Oklahoma Legislature passed HB 2208 in response to the U.S. Supreme Courts opinion in *Okla. Tax Comm. v. Chickasaw Nation*, 515 U.S. 450, 115 S.Ct. 2214, 132 L.Ed.2d 400 (1995). The Chickasaw Nation (Tribe) operated two convenience stores that sold fuel to tribal members and others. Oklahoma levied excise taxes totaling sixteen cents per gallon on gasoline "sold, or stored and distributed, or withdrawn from storage" in the state. 68 O.S.1991 §§ 502, 502.2, 502.4, 502.6, 516, 520, and 522 (repealed by HB 2208, Okla. Sess. Laws 1996, c. 345, § 67). Distributors were required to collect and remit the tax. 68 O.S.1991 §§ 505, 506 (repealed by HB 2208, Okla. Sess. Laws 1996, c. 345, § 67). Tribe challenged the imposition of this tax on its retail stores. The federal district court ruled for Oklahoma. The Tenth Circuit Court of Appeals reversed, holding the legal incidence of the tax was on retailers, not on distributors or consumers, and Oklahomas imposition of the tax on Tribe as retailer conflicted with Tribes sovereignty.

¶ 3 The United States Supreme Court agreed, holding Oklahoma could not impose its motor fuel tax, as then designed, upon fuel sold by Chickasaw Nation retail stores on tribal trust land. It stated,

[T]he inquiry proper here is whether the legal incidence of Oklahoma's fuels tax rests on the Tribe (as retailer), or on some other transactors—here, the wholesalers who sell to the Tribe or the consumers who buy from the Tribe.

. . .

. . . And if a State is unable to enforce a tax because the legal incidence of the impost is on Indians or Indian tribes, the State generally is free to amend its law to shift the tax's legal incidence. So, in this case, the State recognizes and the Tribe agrees that Oklahoma could accomplish what it here seeks "by declaring the tax to fall on the consumer and directing the Tribe to collect and remit the levy."

*Chickasaw Nation*, 515 U.S. at 459, 115 S.Ct. at 2220.

¶ 4 The Oklahoma Legislature responded by restructuring the Motor Fuel Tax Code and recodifying it at 68 O.S.Supp.1996 § 500.1 et seq. It declared its intent is

to amend, revise, incorporate and recodify established revenue raising procedures applied to motor fuels for the construction and maintenance of safe public highways and bridges in this state. It is the intent of the Legislature that the taxes imposed on motor fuel have always been and continue to be declared and conclusively presumed to be a direct tax on the ultimate or retail consumer. When the taxes are paid by any person other than the ultimate or retail consumer, the payment shall be considered as precollected and as an advance payment for the purpose of convenience and facility to the consumer and shall thereafter be added to the price of the motor fuel and recovered from the ultimate or retail consumer, regardless of where or how the taxable fuel is ultimately consumed.

. . .

. . . The purpose of this recodification is a result of the interpretation of the motor fuel tax code of this state by the federal courts, specifically the decision by the Supreme Court of the United States in "*Oklahoma Tax Commission v. Chickasaw Nation*", [515 U.S. 450] 115 S.Ct. 2214 [132 L.Ed.2d 400] (1995).

68 O.S.Supp.1996 § 500.2. The new code maintains the tax rate at sixteen cents per gallon of gasoline, but provides for the tax to

be "precollected" and remitted by the supplier. 68 O.S.Supp.1996 §§ 500.4 and 500.20. It provides an exemption for "[m]otor fuel sold within an Indian reservation or within Indian country by a federally recognized Indian tribe to a member of that tribe and used in motor vehicles owned by that member of the tribe." O.S.Supp.1996 § 500.10(10). In order to claim the exemption, the tribal member must apply for a refund from the tax commission. O.S.Supp.1996 § 500.14.

¶ 5 Section 500.63(C) of the new code makes an "offer to all federally recognized Indian tribes within this state which, if accepted, will constitute a contract between this state and the accepting tribe or tribes." The terms of the offer require an accepting tribe to agree it will not challenge the constitutionality of the act and will abide by the act in its entirety. In return, "the State of Oklahoma, through the Oklahoma Tax Commission, shall withhold a percentage of its motor fuel tax revenues, ... which shall be apportioned quarterly to the accepting Indian tribes. The funds apportioned as provided herein are deemed to be in lieu of tribal tax revenues that the tribes would otherwise have collected on sales of motor fuels." The percentage the State would withhold from its motor fuel tax revenue was three percent for the fiscal year beginning in 1996, four percent in 1997, and four and one-half percent in 1998 and thereafter. The amount the accepting tribe receives includes three elements: (1) a base quarterly sum of $6,250.00, unless the states gross motor fuel tax collections do not exceed $100,000,000.00 in any fiscal year, (2) an amount based on the number of gallons sold by the tribe in the fourth quarter of 1996, equal to ten cents per gallon in the fiscal year beginning in 1996, eight cents in 1997, six cents in 1998, four cents in 1999, and two cents in 2000 and thereafter, and (3) a portion of the remaining withheld funds based on "the proportion the accepting Indian tribe's total Oklahoma resident membership bears to the total Oklahoma tribal resident membership of all accepting Indian tribes." 68 O.S.Supp.1996 § 500.63(C)(4). If the offer is accepted, the term of the contract is provided by § 500.63(C)(8):

> Notwithstanding the enactment of any future legislation on this topic, the term of the contract created by the acceptance of this offer shall extend through and include fiscal year 2016 and shall be renewed for successive ten-year terms unless a tribe notifies the State of Oklahoma of its intention not to participate further or the State of Oklahoma notifies the tribe of its intent not to participate further.

Members of an accepting tribe are not eligible for the exemption provided in § 500.10(10). 68 O.S.Supp.1996 § 500.63(C)(11).

¶ 6 Ryals raises three contentions of error: (1) HB 2208 is a revenue bill passed in contravention of Okla. Const. Art. 5, § 33, (2) HB 2208 obligates the state to a contract for a debt in contravention of Okla. Const. Art. 10, § 26, and (3) HB 2208 establishes a taxing scheme that unreasonably burdens Indian Commerce. However, as a threshold matter, we must resolve the issue of Ryals standing to bring this action. In his petition, Ryals alleges he brings the action "as a taxpayer, tribal member, and motor fuel purchaser." In the joint statement of material facts, the parties agree Ryals is a member of the Citizen Potawatomi Nation, a federally-recognized tribe which has not entered into a compact with the State of Oklahoma for collection of state motor fuels taxes. In the brief supporting its motion for summary judgment, OTC argues Ryals lacks standing because he has shown no injury in fact. OTC points out Ryals has not alleged or shown he has purchased fuel from his tribe or made sales to tribal members. Ryals responds his status as a tribal member and his fuel purchases are not relevant because he is not suing as a tribal member to recover taxes paid. Rather, he argues, he "is bringing suit as a taxpayer of the state of Oklahoma to enjoin the enforcement of contracts that affect state tax revenue."

¶ 7 To establish standing, Ryals "must show (1) actual or threatened injury, (2) for which relief can be given, and (3) the interest to be protected is within a statutorily or constitutionally protected zone. The interest must be direct, immediate and substantial." *Brandon v. Ashworth*, 1998 OK 20, 955 P.2d 233, 235. It may not be conjec-

tural or hypothetical. *Toxic Waste Impact Group, Inc. v. Leavitt*, 1994 OK 148, 890 P.2d 906, 910. A taxpayers interest in enjoining an illegal public contract is sufficient to confer standing. *Brandon*, 955 P.2d at 235.

¶ 8 Ryals has not alleged he has been injured as a tribal member. He does not allege he has purchased fuel from his tribe or even that his tribe is engaged in the retail sale of fuel. In his reply brief, he bases his standing solely on his status as an Oklahoma taxpayer. Therefore, any injury resulting from the legal incidence of the motor fuel tax being placed on him as a tribal member purchasing fuel from his tribe is purely conjectural or hypothetical, and he lacks standing to maintain this action except to the extent he seeks to enjoin an illegal public contract.[1] Accordingly, we will consider only his second proposition of error.

¶ 9 Ryals argues the contracts authorized by § 500.63 are contracts for a debt beyond the current fiscal year in violation of Okla. Const. Art. 10, § 26(a). Ryals also argues that even if § 26 does not apply, § 25 requires the same result. He asserts the obligation created by § 500.63 is a non-self-liquidating debt of the state because the fuel tax payments to participating tribes are taken out of the states general revenue, and future Legislatures are bound to appropriate money under the fuel tax contracts unless the entire Fuel Tax Code is repealed.

¶ 10 OTCs position is the statute does not create illegal contracts because it is self-liquidating. It calls for an immediate turnaround of funds through quarterly apportionments and provides for paying the indebtedness out of a special fund. OTC asserts the statutory scheme represents a joint action between two sovereigns and does not create a "debt" in the constitutional sense of that word. It points out future Legislatures are free to repeal the tax.

¶ 11 Amicus Loyd Benson argues the debt limitations of Okla. Const. Art. 10, §§ 23 and 25 "apply only to such debt, obligations or deficit for the payment of which resort might properly be had to the taxing power of the state," quoting *Oklahoma Turnpike Authority, Application of,* 203 Okla. 335, 221 P.2d 795, 804 (1950). He characterizes the contract created by § 500.63 as a compact between sovereign governments settling disputes as to (1) the method for collecting motor fuel taxes, and (2) the formula for identifying and relinquishing funds that do not belong to Oklahoma, i.e., taxes paid by exempt consumers. Compacting tribes collecting Oklahomas taxes also capture exempt funds from sales to tribal members on tribal land. The statute establishes a formula for calculating the proportion of exempt funds actually collected that are not Oklahoma tax dollars and provides for those funds to be returned to the compacting tribes to which they belong. Therefore, the statute does not obligate any funds belonging to Oklahoma. It is analogous to the States agreements to collect sales taxes on behalf of municipalities or the States obligation to refund excess withholding of income tax. Benson concludes the States obligation to pay these funds is not debt under Okla. Const. Art 10, §§ 23 and 25 because it will not be paid "out of tax money which can otherwise be devoted by the Legislature to any legitimate public use," quoting *Boswell v. State*, 181 Okla. 435, 74 P.2d 940, 949, (1937). Rather, the States obligation is to pay funds **not** belonging to the State.

---

1. As support for its position on standing, OTC string-cites eight cases it claims "flatly deny" taxpayer standing. None of these cases denies taxpayer standing to challenge illegal expenditure of public funds, and five of them expressly recognize it. OTC contends the Oklahoma Supreme Court "repudiated" taxpayer standing in *McFarland v. Atkins*, 1979 OK 3, 594 P.2d 758, 762. In that case, the plaintiff/taxpayer sought a mandatory injunction requiring the Health Department to enforce certain state laws against Planned Parenthood and restraining the Health Department from contracting with Planned Parenthood for family planning services until Planned Parenthood complied with state statutes and regulations. The plaintiff argued, inter alia, she had standing as a taxpayer to sue to enjoin the unlawful expenditure of State funds. The Court concluded the plaintiff had not alleged any unlawful activity on the part of the State and sought only to compel Planned Parenthood to follow all applicable laws and regulations. *Id.* at 762. Accordingly, it held she had no standing to seek injunctive relief against the State Commissioner of Health. *McFarland* did not "repudiate" taxpayer standing to challenge the illegal expenditure of public funds.

¶ 12 Amicus Stratton Taylor also compares the contracts under § 500.63 to those between the State and municipalities under 68 O.S.Supp.1993 § 2702. Municipalities may contract with OTC to collect municipal taxes. OTC then remits the municipal taxes to the municipality monthly as directed by 68 O.S. 1991 § 1374, and no legislative appropriation is involved. Similarly, § 500.63 directs OTC to apportion and remit the motor fuels tax quarterly to the participating tribes. The transmission of funds is performed administratively and does not require legislative appropriation.

¶ 13 Amicus Benson argues the statute does not unconstitutionally bind future Legislatures because it does not bind the Legislature to devote general tax revenues to the payment of debt. It does not deny the Legislature or the people "the right to repeal the levy of the tax or to provide for the distribution of the revenues arising therefrom to another or different purpose." *Boswell v. State,* 181 Okla. 435, 74 P.2d 940, 947, (1937). The funds used to pay the obligation are not State tax revenues "otherwise available for general purposes," *Boswell* at 946, because they may not be lawfully collected as tax dollars of the state, *Chickasaw Nation,* 515 U.S. at 452, 115 S.Ct. 2214.

¶ 14 Acts of the Legislature are presumed valid unless their unconstitutionality is shown beyond a reasonable doubt. *Bethany v. Public Employees Relations Bd.,* 1995 OK 99, 904 P.2d 604, 613. As the Court stated in *Gilbert Cent. Corp. v. State,* 1986 OK 6, 716 P.2d 654, 658 (footnotes omitted),

> Where there are two possible interpretations in the construction of a statute, one of which would render the statute unconstitutional, the Court should adopt the construction which upholds the statute, unless the repugnancy to the constitution is shown beyond a reasonable doubt. This court is bound to accept an interpretation that avoids constitutional doubt as to the validity of the provision.

We adopt the construction of 68 O.S.Supp. 1996 § 500.63 that renders it constitutional. Contracts created pursuant to that section are compacts between the State and tribal governments as authorized by 25 U.S.C.

§ 476(e) and *Okla. Tax Comn. v. Citizen Band of Potawatomi Indian Tribe of Okla.,* 498 U.S. 505, 514, 111 S.Ct. 905, 912, 112 L.Ed.2d 1112. The contracts (1) provide a method for collecting motor fuel taxes and (2) obligate the State to identify and relinquish funds that do not belong to Oklahoma but belong to the participating tribes. Therefore, the contracts do not create debts that must be paid from State revenue, and the Legislature is not bound to devote general tax revenues to the payment of debt. Accordingly, we hold 68 O.S.Supp.1996 § 500.63 is constitutional. The order of the trial court granting summary judgment to OTC is **AFFIRMED**.

JONES, C.J., concurs;

ADAMS, Judge, concurring in result:

¶ 15 *Brandon v. Ashworth,* 1998 OK 20, 955 P.2d 233, holds a taxpayer has standing to bring an action to determine the validity of a contract which would involve the illegal use of money by a *municipal corporation.* The majority opinion assumes, without further analysis, that this principle can be applied to actions against the *state government.* I am not *now* prepared to make such an assumption without further analysis. However, I agree with remainder of the opinion and the decision to affirm the trial court. It would be an inappropriate use of judicial resources for me to delay a decision in this case further in order for me to reach a conclusion on a question which the majority has already decided where my answer to that question can have no impact on my vote on the ultimate outcome of this appeal. Therefore, I concur in result.