Dear Representative Tyler
¶ 0 This office has received your request for an official Attorney General Opinion in which you ask, in effect, the following questions:
 1. Does the State Purchasing Director have authority to negotiate on behalf of all state agencies a mandatory single-vendor contract for personal computers (for one or multiple years) in lieu of normal bidding procedures?
 2. Does 74 O.S. 2001, § 85.9D[74-85.9D] provide the State Purchasing Director authority to negotiate on behalf of all state agencies a mandatory single-vendor contract for personal computers in lieu of normal bidding procedures?
 I. The Oklahoma Central Purchasing Act Grants The State Purchasing Director Sole And Exclusive Authority And Responsibility For All Acquisitions Used Or Consumed By State Agencies.
¶ 1 The Oklahoma Central Purchasing Act ("Act"), 74 O.S. 2001 
Supp. 2003, §§ 85.1 through 85.44C, governs the expenditures of state agencies in acquiring goods and services. Section 85.3 of the Act creates, within the "Department of Central Services ["DCS"] a Purchasing Division, the administrative head of which shall be the State Purchasing Director." 74 O.S. 2001, § 85.3[74-85.3] (A). Absent certain exceptions, "every state agency shall make all acquisitions used, consumed or spent by the state agency in the performance of its official functions by the presentation of requisitions to the Purchasing Division." 74 O.S. Supp. 2003, § 85.4[74-85.4](A). Section 85.5(A) of the Act provides that "the State Purchasing Director, under the supervision of the Director of the Department of Central Services, shall have sole and exclusive authority and responsibility for all acquisitions used or consumed by state agencies." Id.[1] Additionally, Section 85.3(D) provides that "[a]ll activities of any state agency, department, or institution relating to purchasing shall be under the direction of the Purchasing Division unless otherwise provided by the Oklahoma Central Purchasing Act." Id.
¶ 2 One primary aspect of the Act is the requirement for state agencies to engage in competitive bidding. Pursuant to the Act, with certain exceptions, "no state agency [is to] make an acquisition for an amount exceeding Twenty-five Thousand Dollars ($25,000.00) without submission of a requisition to the State Purchasing Director and submission of suppliers' competitive bids or proposals to the State Purchasing Director." Id. § 85.7(A).
¶ 3 The Act generally promotes efficiency and cost-effective use of taxpayer money by requiring private vendors selling goods and services to state agencies to deal with a central entity. As evidenced by these procedures, the Act "is designed to protect the public at large by promoting economy in government and reducing the likelihood of fraud." Ind. Nat'l Bank v. State exrel. Dep't of Human Services, 857 P.2d 53, 60 (Okla. 1993); seeState ex rel. Cartwright v. Tidmore, 674 P.2d 14, 16 (Okla. 1983).
 II. The Legislature Has Enacted Legislation Requiring The Information Services Division Of The Office Of State Finance To Coordinate Data Processing Functions Among State Agencies.
¶ 4 The acquisition of data processing equipment and services is unique among acquisitions as the Oklahoma Legislature has enacted legislation requiring the coordination of data processing functions among state agencies through the Office of State Finance. Pursuant to 62 O.S. 2001, § 41.5[62-41.5] a(A), the Information Services Division of the Office of State Finance is responsible for a number of data processing functions, such as coordinating long-range data processing planning, developing a statewide data processing plan, establishing minimal standards for computer-related plans, providing operations and hardware support for agencies, and assisting agencies in the acquisition and utilization of data processing systems and hardware. Id. "No agency of the executive branch of the state shall use state funds for or enter into any agreement for the acquisition of computer hardware or software exceeding Two Thousand Five Hundred Dollars ($2,500.00) in value without written authorization of the Director of State Finance." Id. § 41.5a(B).
¶ 5 Section 41.5e of Title 62 requires state agencies to develop long-range plans for electronic data processing and to submit those plans to the Information Services Division. Subsection B of Section 41.5e provides:
 B. No agency of the executive branch of this state shall enter into any agreement for the acquisition, development, or enhancement of application systems software or for the acquisition of electronic data processing equipment, peripheral devices whether or not connected to such equipment, unless the cost of such acquisition, development, or enhancement has been included in said agency's plan.
2004 Okla. Sess. Laws ch. 128, § 1 (amending 62 O.S. 2001, § 41.5e[62-41.5e]).
¶ 6 Additional powers and duties were given to the Information Services Division at Section 41.5i. Those powers include the requirement for the Information Services Division to "[s]erve as a focal point for all statewide projects involving current communications vendors where the focus of such authority can substantially enhance the state communications plan or the savings which can be achieved thereunder[.]" Id. § 41.5i(4).
¶ 7 Thus, the Office of State Finance has a vital role in data processing acquisitions. The DCS also has an important role in the coordination of data processing acquisitions. In 1995, the Oklahoma Legislature established certain exceptions with regard to the acquisition of computer software and hardware maintenance. A new statute was enacted which requires all agencies within the executive branch to coordinate any purchases of computer software maintenance and hardware maintenance contracts through DCS. See
1995 Okla. Sess. Laws ch. 291, § 1(2) (codified at 74 O.S. Supp. 1995, § 85.9D[74-85.9D](2)). Since that time, a number of changes have been made to the statute. The statute now reads:
 A. Except as otherwise provided in subsection B of this section, agencies within the executive branch shall coordinate acquisition of computer software maintenance and hardware maintenance contracts through the Purchasing Division of the Department of Central Services. The Purchasing Division may establish consolidation contracts and enterprise agreements for state agencies. The State Purchasing Director may negotiate consolidation contracts, enterprise agreements and high technology system contracts in lieu of or in conjunction with bidding procedures to reduce acquisition cost.
 B. The provisions of this section shall not apply to the Northeast Oklahoma Public Facilities Authority.
74 O.S. 2001, § 85.9D[74-85.9D].
¶ 8 You ask whether this or any other statute gives the State Purchasing Director authority to negotiate on behalf of all state agencies a mandatory single-vendor contract for personal computers in lieu of normal bidding procedures. Your question actually involves two components: (1) whether the State Purchasing Director has authority to negotiate a mandatory single-vendor contract for all state agencies regardless of the desires of those individual agencies, and (2) whether the State Purchasing Director has authority to negotiate a single-vendor contract for personal computers in lieu of normal bidding procedures.
 III. The State Purchasing Director Has Authority To Negotiate Consolidation Contracts, Enterprise Agreements And High Technology System Contracts In Lieu Of Normal Bidding Procedures.
¶ 9 We will address the latter question first. The normal bidding procedures are those set forth at 74 O.S. Supp. 2003, § 85.7[74-85.7]. That section requires that "no state agency shall make an acquisition for an amount exceeding Twenty-five Thousand Dollars ($25,000.00) without submission of a requisition to the State Purchasing Director and submission of suppliers' competitive bids or proposals to the State Purchasing Director." Id. § 85.7(A). The Act places the requirement for receiving bids or proposals into the hands of the individual state agencies. Id. To acquire contractual services, supplies, equipment, or materials, agencies must submit a requisition to the Purchasing Division of DCS.Id. The Act specifically provides, "[s]ubject to the provisions of this section, every state agency shall determine its own quantitative needs for acquisitions and the general class or nature of the acquisitions." Id. § 85.4(C). Once an agency is approved to make a purchase, the procedure is under the control of the State Purchasing Director.[2] The State Purchasing Director has the authority to determine "the particular brand, model, or other specific classification of each acquisition and to draft or invoke pursuant to the Oklahoma Central Purchasing Act specifications establishing the requirements for all necessary contracts or purchase orders." Id. § 85.5(B).[3]
¶ 10 The relevant part of the statute in question, Section 85.9D(A), provides an exception for consolidation contracts, enterprise agreements and high technology system contracts, providing that the State Purchasing Director may negotiate these contracts "in lieu of or in conjunction with bidding procedures to reduce acquisition cost." Section 85.9D gives the State Purchasing Director the power to negotiate consolidation contracts, enterprise agreements and high technology systems for the benefit of state agencies. The terms "consolidation contract," "enterprise agreement" and "high technology system" used in the statute are defined at 74 O.S. 2001, § 85.2[74-85.2]. "`Consolidation contract' means a contract for several state agencies for the purpose of purchasing computer software maintenance or hardware maintenance[.]" Id. § 85.2(9). "`Enterprise agreement' means an agreement for computer hardware, software, and service that a supplier manufactures, develops, and designs, and that one or more state agencies use[.]" Id. § 85.2(14). "`High technology system' means advanced technological equipment, software, communication lines, and services for the processing, storing, and retrieval of information by a state agency[.]" Id. § 85.2(16).[4] Thus, the Director has the power, pursuant to this statute, to bypass the routine requisition procedures and negotiate these types of contracts without going through the competitive bidding procedures.
¶ 11 The Act also authorizes the Director of DCS to promulgate rules to enforce its regulatory power. Section 85.5(C)[5]
gives the Director the authority and responsibility to promulgate rules "governing, providing for, prescribing, or authorizing any act, practice, or requirement for which regulatory power is delegated for" certain enumerated functions including:
 4. The conditions under which the Department of Central Services shall require written contracts for acquisitions, the conditions under which acquisitions may be made on an open account basis, and the conditions and manner of negotiating such contracts;
. . . .
 16. Any other matter or practice which relates to the responsibilities of the Director of the Department of Central Services.
Id.
¶ 12 The Oklahoma Supreme Court acknowledged this rulemaking authority finding, in Indiana National Bank, that rules governing the modification of contracts enacted pursuant to the Central Purchasing Act have the force and effect of law. Ind.Nat'l Bank, 857 P.2d at 60, 62; see also Toxic Waste ImpactGroup, Inc. v. Leavitt, 755 P.2d 626, 630 (Okla. 1988) ("Rules and regulations enacted by administrative agencies pursuant to the powers delegated to them have the force and effect of law and are presumed to be reasonable and valid.") (footnotes omitted).
¶ 13 The DCS has established, by rule, a specific procedure for negotiating these types of data processing contracts. The applicable rule, OAC 580:15-2-7, titled "State Purchasing Director authority" contains a specific provision for negotiation of these contracts. That provision states:
 (e) Negotiation. The State Purchasing Director or designee may negotiate consolidation contracts, enterprise agreements, and high technology system contracts in lieu of or in conjunction with bidding procedures by noting in the solicitation that negotiations will be conducted and by following these rules for negotiation. Negotiations may be conducted with suppliers whose technical proposals are acceptable and whose price proposals are within the competitive range.
 (1) Negotiation team. The State Purchasing Director shall designate a negotiation team consisting of a minimum of two individuals. The team members shall be familiar with the technical and cost aspects of the contract and have training in the dynamics and techniques of negotiation. The State Purchasing Director or designee shall serve as the chief negotiator for the team.
Id. This rule sets forth a process for conducting the negotiations and creating a memorandum of agreement. Thus, Section 85.9D and the administrative companion rule provide authority for the State Purchasing Director to negotiate contracts that meet the definition of consolidation contracts, enterprise agreements and high technology system contracts for state agencies in lieu of normal bidding procedures.
¶ 14 Your question also encompasses a concern as to whether single-vendor contracts may be negotiated for multiple years. Oklahoma Constitution Article X, Section 23 provides, in pertinent part, "[t]he state shall never create or authorize the creation of any debt or obligation . . . against the state, or any department, institution or agency thereof, regardless of its form or the source of money from which it is to be paid, except as may be provided in this section and in Sections 24 and 25 of Article X of the Constitution of the State of Oklahoma." Oklahoma Constitution Article X, Section 26 is the companion provision which applies to cities and other subdivisions. That Section provides that "no county, city, town, township, school district, or other political corporation, or subdivision of the state, shall be allowed to become indebted, in any manner, or for any purpose, to an amount exceeding, in any year, the income and revenue provided for such year without the assent of three-fifths of the voters thereof, voting at an election, to be held for that purpose. . . ."
¶ 15 The court's reasoning in cases interpreting Section 26 also applies to Section 23. Section 26 has been interpreted to prohibit a contract which binds the State to an agreement to expend future fiscal year funds. Indep. Sch. Dist. No. 1 v.Howard, 336 P.2d 1097, 1098 (Okla. 1959); A.G. Opin. 79-99, 147, 149. Multi-year contracts in and of themselves are not invalid so long as they do not purport to bind the State to an agreement to appropriate funds for any subsequent fiscal year. An agreement between a vendor and DCS with a primary term of one year which permits an option in favor of renewal from year to year is not inherently prohibited by the Constitution. See Halstead v.McHendry, 566 P.2d 134, 137-38 (Okla. 1977). The court also recognized that a contract which is conditioned upon continued funding on a fiscal year basis by the Legislature continuing to appropriate funds to satisfy the obligation does not violate the constitutional debit limitation provision. In re Okla. CapitolImprovement Auth., 958 P.2d 759, 769-70 (Okla. 1998). Thus, DCS may negotiate a multi-year contract so long as it does not bind the State to appropriate funds from revenues of future years.
 IV. The State Purchasing Director Has Authority To Negotiate A Mandatory Statewide Contract For Personal Computers.
¶ 16 You ask whether the State Purchasing Director has authority to negotiate a mandatory single-vendor contract for personal computers to be used by all state agencies. The State Purchasing Director has the ultimate authority, pursuant to Section 85.4 of Title 74, to determine to whom a particular contract will be awarded. Oklahoma courts have consistently recognized the broad authority and responsibility of DCS in the area of state purchasing. See Cunningham Lindsey Claims Mgmt.,Inc. v. Okla. State Ins. Fund, 38 P.3d 248, 251 (Okla.Ct.App. 2001) (holding that allowing the Commissioner of the State Insurance Fund to modify a contract without approval of the State Purchasing Director undermined the intent and purpose behind the Act); Ind. Nat'l Bank, 857 P.2d at 61-62 (holding the language of the Act and the rules clearly indicate that, with certain exceptions, DCS is the sole entity with authority to negotiate and accept contract offers).
¶ 17 Generally, the State Purchasing Director has authority under the Act to enter into any "statewide, multistate or multigovernmental contract." 2004 Okla. Sess. Laws ch. 5, § 87(G)(1) (amending 74 O.S. Supp. 2003, § 85.5[74-85.5](G)(1)). "Statewide contract" is defined at Section 85.2(35) as "a contract for specific acquisitions entered into by state agencies during a specified [time] period with a provision allowing the agencies to place orders as the acquisitions are needed for delivery during the period specified[.]" Subsection (G)(3) of Section 85.5 provides that "[t]he State Purchasing Director may designate contracts described in this subsection for use by state agencies." Such contracts are exempt from competitive bidding procedures. Id. § 85.7(15).[6]
¶ 18 The DCS has adopted rules governing statewide contracts, including designating certain contracts as mandatory contracts. The applicable rule, OAC 580:15-6-5, titled "Methods State Agencies Use to Make Acquisitions" provides, in pertinent part:
 State agencies shall make acquisitions using a method of acquisition in this section.
 (1) Statewide Contracts. The State Purchasing Director shall designate statewide contracts as mandatory or nonmandatory.
 (A) Mandatory statewide contract. The State Purchasing Director may designate a statewide contract for mandatory use. State agencies shall make acquisitions from mandatory statewide contracts regardless of the acquisition purchase price. A state agency may submit a written request to the State Purchasing Director to waive requirements for a state agency's use of a mandatory statewide contract for acquisitions. The State Purchasing Director shall grant exceptions prior to a state agency making the acquisition from another supplier.
 (B) Nonmandatory statewide contracts. State agencies may use nonmandatory statewide contracts when an agency determines it is in the best interest of the state.
Id. (emphasis added). Viewing the statutory provisions of Section 85.5(G) in conjunction with this rule demonstrates that the State Purchasing Director has authority to enter into mandatory statewide contracts to acquire personal computers for state agencies. "The use of `shall' by the Legislature is normally considered as a legislative mandate equivalent to the term `must,' requiring interpretation as a command." UnitedStates ex rel. Farmers Home Admin. v. Hobbs, 921 P.2d 338, 342
n. 16 (Okla. 1996).
¶ 19 The significance of Section 85.9D, referenced in your question, is the requirement that agencies within the executive branch are to coordinate acquisitions of computer software maintenance and hardware maintenance through the Purchasing Division of DCS and that DCS may negotiate these types of contracts without competitive bidding. Section 85.9D gives DCS the authority to establish these contracts for the common benefit of state agencies but does not itself contain any mandatory language providing that state agencies are limited to making acquisitions only through these contracts. That mandatory requirement for statewide contracts comes from the other statutory provisions and administrative rules discussed above.
¶ 20 It is important to realize that while DCS is the sole entity with the authority to negotiate and accept contract offers, the Supreme Court noted in Indiana National Bank that Section 85.5 specifically requires DCS to consult with the requisitioning agency. Ind. Nat'l Bank, 857 P.2d at 62 n. 7. Any mandated contract must meet the specifications of the requisitioning agency as far as needs and general class or nature of the acquisitions. 74 O.S. Supp. 2003, § 85.4[74-85.4](C). It is important to note also that OAC 580:15-6-5(1) provides for a state agency to submit a written request to the State Purchasing Director to waive requirements the state agency's use of a mandatory statewide contract for acquisitions. The State Purchasing Director has authority to grant exceptions to use of the mandatory contract. Id.
 ¶ 21 It is, therefore, the official Opinion of the AttorneyGeneral that:
 1. The Oklahoma Legislature has given the Office of State Finance responsibility for coordinating data processing planning through state agencies' long-term data processing plans. 62 O.S. 2001, §§ 41.5a[62-41.5a]. State agencies must develop long-range plans for electronic data processing and submit those plans to the Information Services Division of the Office of State Finance. 2004 Okla. Sess. Laws ch. 128, § 1 (amending 62 O.S. 2001, § 41.5e[62-41.5e]). No agency may enter into any agreement for the "acquisition, development, or enhancement of application systems software or for the acquisition of electronic data process equipment" or peripheral devices unless the cost has been included in the agency's long-range plan. Id. § 41.5e(B).
 2. The State Purchasing Director, in consultation with requisitioning state agencies, has "sole and exclusive authority and responsibility for all acquisitions used or consumed by state agencies." 2004 Okla. Sess. Law Serv. ch. 5, § 87 (amending 74 O.S. Supp. 2003, § 85.5[74-85.5](A)). Generally, state agencies may not make an acquisition exceeding twenty-five thousand dollars without submission of suppliers' competitive bids or proposals to the State Purchasing Director. 74 O.S. Supp. 2003, § 85.7[74-85.7](A)(1).
 3. Agencies within the executive branch are required to coordinate acquisition of computer software maintenance and hardware maintenance contracts through the Purchasing Division of the Department of Central Services. 74 O.S. 2001, § 85.9D[74-85.9D](A). The State Purchasing Director has the specific authority, pursuant to Section 85.9D(A), to negotiate "consolidation contracts, enterprise agreements and high technology system contracts" in lieu of normal bidding procedures.
 4. The State Purchasing Director has general authority pursuant to the Oklahoma Central Purchasing Act, 2004 Okla. Sess. Laws ch. 5, § 87(G) (amending 74 O.S. Supp. 2003, § 85.5[74-85.5](G)), and administrative rules of the Department of Central Services, specifically OAC 580:15-6-5, to negotiate a mandatory single-vendor statewide contract for personal computers for use by state agencies.
 W.A. DREW EDMONDSON Attorney General of Oklahoma
 SANDRA D. RINEHART Senior Assistant Attorney General
[1] See 2004 Okla. Sess. Law Serv. ch. 5, § 87 (amendments were made to Section 85.5 in the 2004 Second Regular Session of the Forty-Ninth Legislature; however, they are not germane here).
[2] "State agencies shall have the right to question the grade and quality of any merchandise delivered to the agency. The Central Purchasing Division must determine, through postaward [sic] contract administration procedures, whether the supplies and services meet the grade and quality specified in the contract, and take remedial action with the appropriate vendor if the supply or service does not." 74 O.S. 2001, § 85.6[74-85.6].
[3] See 2004 Okla. Sess. Law Serv. ch. 5, § 87 (amendments were made to Section 85.5 in the 2004 Second Regular Session of the Forty-Ninth Legislature; however, they are not germane here).
[4] A separate statute also exists regarding high technology systems and upgrades and enhancements. See 74 O.S. 2001, § 85.7c[74-85.7c]. This statute applies to all state agencies regardless of whether the agency is subject to the Central Purchasing Act. It provides qualifications for vendors who supply high technology systems and upgrades or enhancements and requires that these qualifications be met by vendors contracting with state agencies.
[5] See 2004 Okla. Sess. Law Serv. ch. 5, § 87 (amendments were made to Section 85.5 in the 2004 Second Regular Session of the Forty-Ninth Legislature; however, they are not germane here).
[6] You mention in your letter requesting this Opinion that Section 85.9D is entitled, "Contracts for computer software and hardware maintenance — Coordination through Department of Central Services — Contracts on behalf of One Net," and note that OneNet is defined in Section 85.9E as the "State of Oklahoma's telecommunication network." Letter from Mike Tyler, State Representative, 405 State Capitol Building, to W.A. Drew Edmondson, Attorney General (Apr. 1, 2004) (on file with Attorney General's office). In 1998, there was a reference to OneNet in the heading to section 85.9D and in the body of the statute.See 74 O.S. Supp. 1998, § 85.9[74-85.9](D). However, the statute was amended in 1999 to remove the references to OneNet. See
1999 Okla. Sess. Laws ch. 289, § 7(C) (amending 74 O.S. Supp. 1998, § 85.9D[74-85.9D](C)). Section 85.9D is now entitled, "Contracts for computer software and hardware maintenance — Coordination through Purchasing Division," and the provision requiring that purchase of computer software maintenance and hardware maintenance contracts for the telecommunications network known as OneNet shall be coordinated with the Information Services Division of the Office of State Finance has been repealed. See id. A separate statute governing OneNet, 74 O.S. 2001, § 85.9E[74-85.9E], now exists and provides that DCS shall recognize "as a statewide contract an unencumbered contract consummated" in behalf of OneNet, "provided, said recognition shall require recommendation by the Information Services Division of the Office of State Finance." Id. § 85.9E(A). The accompanying rule, OAC580:15-6-11(i), provides that state agencies may make acquisitions through OneNet pursuant to this statute. OneNet is an example of a statewide contract, but it is not an exclusive contract for computer maintenance and service.